We'll hear argument first this morning in case 2979, Patel v. Garland. Mr. Fleming? Mr. Chief Justice, and may it please the Court, as the government agrees, section 1252A2B1 does not bar review of the agency's threshold determination that Mr. Patel is ineligible for adjustment of status. That understanding is consistent with the statutory text, context, and history, and it's also consistent with this Court's explanation in Kukana that the B1 bar is limited to decisions made discretionary by legislation. Congress could have written B1 differently. It could have barred review of any individual determination, as it did in subsection A1, or of the final order of removal, as it did in subsection C. But Congress didn't use those words. It used judgment, and specifically any judgment regarding the granting of relief. And nobody has identified any instance in which the INA uses judgment in the sweeping way suggested by the Eleventh Circuit. To the extent there's any doubt, though, it is resolved by the strong presumption of reviewability of agency action, and that's especially so because the Eleventh Circuit's position, undisputedly, bars all judicial review, even for errors of law, of the numerous adjustment of status decisions that are made outside of removal proceedings by U.S. Citizenship and Immigration Services. The court-appointed amicus does not deny that or attempt to justify it. That's enough to resolve this case. The court does not need to resolve the slight difference between our reading and the government's. We all agree it does not affect Mr. Patel's situation. And to the extent that this court does reach it, we believe our reading is preferable, both because it gives full meaning to the phrase regarding the granting of relief, the government does not, but rather treats it as though it weren't even in the statute, and also because our reading is easily administrable. Jurisdictional lines should be clear, and our line is clear. Threshold decisions regarding eligibility are not subject to B-1. The discretionary decision to grant relief to an eligible non-citizen is. And again, if there's any doubt, the strong presumption of reviewability breaks the tie in our favor. And I'd welcome the court's questions. Counsel, normally we review judgments or orders and not reasoning. It seems as though you're asking us to review reasoning as opposed to the order itself. So, Justice Thomas, the review in an immigration case is of a final order of removal, and as this court said in Chadha, the final order of removal subsumes everything that goes before. The question for purposes of interpreting the jurisdictional bar is what Congress meant by the phrase, any judgment regarding the granting of relief. Well, that seems pretty broad. Well, Congress in immediately neighboring sections used far broader terms in the preamble to B. It says judgment, decision, or action, but then B-1 only catches judgment, whereas B-2 uses decision or action, which are broader terms. Subsection A-1 talks about any individual determination, which is much broader. Had Congress wished to bar any possible determination that goes into evaluating an application for adjustment of status, it could have said any individual determination, any decision or action, or the final order of removal, which is in administrative law, and certainly in immigration law, the final decision of the agency that includes everything that has gone before. So, if you wanted to accomplish what Amicus argues, how would you have written it? Any decision or action under sections, and then the five types of removal, which is the language that Congress used in B-2. It simply qualified it by saying the decision or action has to be specified by statute as in the Attorney General's discretion. And that is, and there are other additional contextual clues, but I think those are the main ones. But I don't, I don't see any real difference between what you're, you suggest would do the job versus what's already there. So, there are two differences, Justice Thomas. One is the word judgment in administrative law and immigration law is used in a narrow way to mean a discretionary determination or discretionary decision. No one in this case, not the Eleventh Circuit, not the Amicus, not the parties, have come up with any use of judgment in the INA that refers to factual findings or refers to judgment in the broad sense we would think of it under the federal rules of civil procedure. It's just not used that way in administrative law and certainly not in immigration law. Moreover, we have additional contextual cues. Most importantly, it's the reasoning that this court employed in Kukana, because B-2 uses any other decision or action which links B-1 and B-2 together in a way that this court said shows that both sections were directed to decisions made discretionary by statute. There is no way to reconcile the Eleventh Circuit's view with that language in Kukana. With respect to the five forms of relief that are enumerated, what is it that is specified as discretionary by legislation? It's not the eligibility factors. It's not whether someone like Mr. Patel is admissible to the United States. That is a factual issue or an issue of mixed law, in fact, that is frequently reviewable and in fact is reviewed because it is a basis for holding someone removable from the country. And if the government in this case had charged Mr. Patel with being removable because he misrepresented U.S. citizenship, it would have been reviewable. That very issue would have been reviewed on an appeal of the final order of removal. But because it was not charged as a removability ground, but simply as a bar to discretionary relief of adjustment of status, under the Eleventh Circuit's view, that very same issue was not removable. That, we think, must be incorrect because Congress does not typically allow the jurisdiction of the federal courts to turn on the charging decisions of the executive. This court said that much in Kukana. Mr. Fleming, just on this same line, I mean, are you saying that judgment regarding the granting of relief means what you say it means as a matter of just ordinary meaning? Or are you saying that it's a term of art in the immigration statutes? And if so, which portion, you know, is it the whole phrase, judgment regarding the granting of relief? Is it just the word judgment? I mean, what are you saying we should read your way and why? Well, so there are a couple of answers to that, Justice Kagan. First of all, I think we would all agree, and the Eleventh Circuit agreed, judgment by itself in isolation can have several meanings. And so one needs to look at it in the context in which it is used. Regarding the granting of relief, we believe calls in the traditional distinction, which this court has noted several times, going back to Foti versus INS and St. Cyr, that these discretionary grants of relief happen in two stages. First, there's a determination whether the non-citizen is eligible for relief, and those are not discretionary. Those are issues of fact, except to the extent Congress has specified them as discretionary, in which case they're not reviewable under B-2. But then, once someone is found to be eligible, then the agency looks at whether to grant relief. And the granting of relief, this court used that very phrase in St. Cyr, refers to the second stage decision. And do you have other places in the statute or in regulations where that phrase means what you're saying it means, which is, in other words, that it refers only to the Stage 2 discretionary determination, as opposed to the Stage 1 eligibility determination? And again, I'm talking about this, you know, judgment regarding the granting of relief, or the granting of relief, whether that phrase is specifically used to invoke the Step 2 determination, as opposed to the Step 1 determination. So I think the best example for that, Justice Kagan, is the asylum carve-out in B-2, which does use the phrase the granting of relief. And it carves out of the jurisdictional bar of B-2, the granting of relief under the asylum statute. And that must refer to the second stage discretionary decision, whether to grant asylum to someone who is eligible for asylum. Why? Because the eligibility requirements for asylum are not specified as discretionary. So it would not make sense to carve them out of B-2, because they don't fall within B-2 by their own terms. The only thing that would otherwise fall under B-2, and therefore needs a carve-out, is the second stage discretionary decision by the executive to grant asylum to someone who is eligible for it. And that's why the granting of relief is used in B-2. I think this court in St. Cyr uses the words, the actual granting of relief on pages 307 and 308 of the opinion, which of course is not statutory, but it does show how that language has been used to distinguish the second stage granting of relief in the exercise of discretion as opposed to eligibility. There's also a provision that distinguishes the two with respect to the non-citizen's burdens of proof. And that's 1229A, subparagraph C4A, which talks about how the non-citizen has the burden to prove eligibility in the first place, but then separately also whether they're entitled to relief in the exercise of discretion. I was simply going to conclude, if I may, that at the very least, even if the court believes that there are reasonable interpretations on both sides, we're talking about a situation that's governed by the presumption of reviewability. And so, you know, we think this is, we think that we're right in terms of the best reading of the statute, but at the very least, under the presumption, which this court just as recently as last year called well settled and strong, that we think breaks the tie in our favor. Mr. Fleming, I'm just wondering, you know, Amika says of both your interpretation and the government's that if you make all of the preliminary determinations reviewable that the jurisdictional bar doesn't, or the bar to judicial review doesn't have that much work to do. How do you respond to that? So we think that's incorrect, Justice Barrett. And that's because before IHRA, before 1996, the courts were reviewing the second stage determination whether to grant relief in the exercise of discretion. And we cite a number of those cases in footnote six of our reply that, you know, reversed the BIA or the immigration judge on an exercise of discretion. And that is what Congress through B1 was trying to get rid of, was trying to say, you can review, we believe, the eligibility factors. But once someone is found to be eligible, if the agency says nonetheless we are going to deny relief in the exercise of discretion, that is not reviewable, except, you know, for purposes of subsection B, it restored the possibility of review for errors of law or constitutional errors. That is the work that's being done. Then I don't understand where your argument is going. If ultimately what you want is adjustment of status, right? Yes, Your Honor. And that's a discretionary determination. Yes. And you want that reviewed. You want that overturned. Well. Isn't that right? At the moment, what we want is the 11th Circuit to review our argument that the agency made an error in findings to Patel ineligible. Yeah. And then if that is reversed, it would go back to the agency that would then have to determine whether to grant relief in the exercise of discretion, which is a determination that hasn't been made yet. Do you know how many people apply for adjustment of status that are found eligible, but for whom the agency exercises or the agent exercises discretion not to grant adjustment of status? I'm afraid I don't have those numbers, Justice Sotomayor. I'm not sure they're reported in that level of detail. I think you can find numbers as to the number that are granted and denied, but I'm not sure of any statistics. The government may be better able to answer this question. Could you tell me what the state of the law was in 2005 with respect to B-1? How had the circuits ruled up to that point? Before 2005, my understanding is most of the circuits had said that review was possible of factual determinations to do with eligibility, which is part of the acquiescence argument we make. Again, we don't think that's necessary, however, because again, the focus would have been on 1996 and what it is Congress was trying to accomplish then. It's certainly true that Congress could have changed things in 2005 if it wasn't pleased with them. Mr. Fleming, I understand about the presumption of reviewability, but this area, exercise of discretion by the Attorney General with respect to immigration and refugee matters, there is a presumption also that the discretion is broad and to an unusual extent compared to other areas unreviewable. Don't those two presumptions kind of cancel each other out and we're left with just reading the statute as it's written? I don't think so, Mr. Chief Justice, because we're talking about a situation where we're not saying that the discretionary decision whether to grant relief is reviewable. We didn't even get to that stage in Mr. Patel's case. We're talking about the application of statutory factors that Congress has created, one of them being inadmissibility to the United States, which is the one that's at issue here. That's reviewable all the time because it is a ground of removal and the mere fact that it was charged in this case as a bar to adjustment of status rather than as a ground of removal doesn't change the leeway that the BIA has to adjudicate it. It's still taking Congress's... I wonder, I mean, I think that's an argument based on the statute itself. I'm just suggesting that presumptions don't seem to me to give too much weight in this case because they do cancel out. You don't dispute that there's a presumption in favor of discretion in the exercise of admission, removal, that the breadth of discretion to the executive branch here is quite broad. I don't know that I would agree with that, Mr. Chief Justice, certainly not when it comes to applying standards, the factors that are either factual or legal that Congress has determined. I mean, this court applied the presumption of reviewability in Fukuna just last year and Guerrero-Lasprilla, those were interpreting these very same provisions and there was no suggestion that the presumption had any less force in those cases or that it should have any less force here because the presumption implements the important separation of powers consideration that we don't assume that Congress is allowing the executive branch to have the last word on whether it's complying with congressional mandates unless there's very clear language. Thank you, Justice Thomas. Anything further? Justice Breyer? Why isn't the most relevant context here the review by a court of a decision by a lower level tribunal? In that context, judgment has a pretty clear meaning. There are judgments of the district court as defined by the federal rules of procedure, civil and criminal, there are judgments of the courts of appeals, there are judgments of this court. Why isn't that the most relevant context? Because that's not how the word is used in the context of administrative law. The APA, 5 U.S.C. 551 Paren 6 calls the order the final disposition of an agency in a matter other than rulemaking. This court in INS versus Chadha said the term final orders includes all matters on which the validity of the final order is contingent. The statute itself talks about review of the final order. Your Honor is quite right. If we were talking about review of a district court, the federal rules of civil procedure and the judiciary code use judgment in that way. In administrative law and especially in immigration law, judgment's not used that way. What is your strongest point to show that this APA definition applies under the INA? Oh, well, if one looks at 1252 A.1, judicial review of a final order of removal is governed only by Chapter 158 of Title 28 except as provided. And that's the general grant of review in immigration cases is review of a final order of removal. And this court and I don't know of any other court that has taken the view. But that's not what's being reviewed here. Yes, it is. Well, the adjustment of status is the part that you're contesting. Well, that's the issue we have appealed because there was a concession of removability. But the immigration judge still entered a final order of removal. In this particular case, but the two things don't always go together. They generally do because under the zipper clause, 1252 B.9, appeal of all issues that are, that come up in a removal proceeding are channeled into the petition. They generally do. They don't always. The only situation I can think of where adjustment of status would come up without a removal order would be in a situation where someone has, for instance, is here lawfully, is not subject to being removed. They're on a temporary visa, student visa, employment visa. They marry a U.S. citizen and then they seek adjustment of status by filing an application with USCIS. And if that's denied, normally you would expect, again, under the presumption of reviewability and also under the APA, that you would file an action in district court to challenge the legality of USCIS's determination. This is a major flaw in the 11th Circuit's approach because the 11th Circuit would say, you can't challenge that at all even for an issue of law. Because in their view, that is a judgment that is barred by B.1. And the notion that Congress would have prevented any form of judicial review even for legal error in a vast quantity of cases where adjustment of status is sought from is simply not plausible and would require much clearer language than we have here. Mr. Solior, anything further? Mr. Fleming, in response to Justice Alito's question, I'm not sure why it matters to your position very much what the word judgment means, whether it means the final determination, the official order, or something else. I mean, I understand why it matters to the government, but why does it matter to you? As I understood your position, your position is just that the entire phrase, judgment regarding the granting of relief, refers to the Step 2 determination rather than the Step 1 determination, and whatever judgment means, whether it refers to the official order or some kind of discretionary decision making along the way or both, your position would still stand, wouldn't it? I think that's right, Justice Kagan. I was just trying to give Justice Alito's question a fulsome answer and also to make sure that there was no confusion, that we didn't, to make sure that the court recognizes that we don't think judgment as used here subsumes everything. We don't think that's a correct reading of how the word is used in immigration law. But it's certainly true that even if judgment means the ultimate final order, the thing that is made not reviewable by B1 is the judgment regarding the granting of relief, and we think that is the second stage determination, whether to grant relief in the exercise of discretion to someone who has been found to be eligible for it. As opposed to the Step 1 eligibility determination. Step 1 eligibility determinations are reviewable. There could be a situation if Congress in the future wanted to say this one, we're specifying this as being in the discretion of the Attorney General, then it would be unreviewable under B2. But B1 has nothing to say about that. Justice Gorsuch, anything? In the removal context where this arises, I just want to make sure I understand the difference in the two positions, everything related to the removal would be reviewable. And with respect to the denial of discretionary relief, legal questions and mixed questions, everyone in the room I think agrees would be reviewable, correct? I believe that's right, yes. So only questions of historical fact, or questions of fact, I don't know if that, the word historical is the dispute here, review of those, is that correct? So as to the... In the removal context. So as to the, so not talking about denials of discretionary, denials of discretionary relief, I don't think there's a dispute as to what is reviewable in terms of removability. So if someone has actually contested removability, and let's leave out the cases of criminal convictions. Sorry to interrupt, on removability I agree. On the denial of discretionary relief, we're just talking about fact questions, correct? Yes. That's the dispute here. It's solely about fact questions because everyone agrees, I think, that legal questions and mixed questions will get judicial review. Yes, that's right. And only fact questions at the first, what I'm calling the first stage, with respect to eligibility requirements. And on the fact questions, how could an appellate court, and this question cuts both ways, so, how can an appellate court look at a cold record and determine a factual error when it relates to credibility, for example, or something like that? So just give me some examples where this will matter, I guess. Well, as the AMICI, the American Immigration Lawyers Association, and the EOIR judges point out, it's not uncommon. I mean, the standard is still substantial evidence, so most cases do fail on the merits. But it is not uncommon for courts of appeals to find serious problems with how the agency determines credibility. Credibility is, of course, a question of fact. This court said this in Nasrallah. It's a factual issue that is reviewable on appeal. Deferentially, we don't dispute that. But, you know, in this case, for example, we think that the credibility determination against Mr. Patel was sorely informed by the judge's misunderstanding of what was required in order to get a license in Georgia. And, you know, that is an issue that we fully briefed to the 11th Circuit. It didn't reach it because it believed it lacked jurisdiction. But I think this will matter in not very many cases, but in the cases where it does matter, that is a very desirable result, because we do not want the agency to be making such serious decisions on the basis of anything less than substantial evidence. Thank you. Thank you, Your Honor. Justice Barrett? Thank you, Counsel. If I might, Chief, I'm sorry. Sure. If they're going to get review in the removability context, why isn't that enough? Because of what happened in this case, Justice Sotomayor. In this case, for reasons that the government trial attorney could not explain when asked by the immigration judge, the government did not charge this inadmissibility issue, the misrepresentation of citizenship, as a ground of removability. That was only raised as a defense to adjustment of status. Had they charged it as a removability ground, we wouldn't be here because it would have gotten reviewed in that context. So why does that matter? Meaning, is it because no one now will decide this issue? Unless this court reverses, no one other than the agency is going to decide it. The agency will have been the last word on an issue of inadmissibility, which is an issue frequently reviewed by the courts as either a fact question or a mixed question. Thank you. Thank you, Counsel. Thank you, Your Honor. Mr. Raynor? Mr. Chief Justice, and may it please the Court, Section 1252A2B precludes review of any judgment regarding the granting of relief under five enumerated provisions, as well as any other decision or action of the Secretary or the Attorney General, the authority for which is specified to be in their discretion. By its terms, that provision bars review of discretionary determinations, not nondiscretionary determinations like the question of fact at issue here. Petitioners now largely agree with that reading as a practical matter, conceding that even discretionary eligibility criteria will be reviewable under the second clause, if not the first. Amicus' principal counterargument is that questions of fact are unreviewable because they fall outside the scope of subparagraph D, which preserves review over questions of law. That argument fails because this case involves the scope of a different provision, subparagraph B, Roman at 1. This Court should reverse the judgment below and remand for further proceedings. Mr. Raynor, could you tell me what, how would the outcome, or in which cases would the outcome be different under your analysis, as opposed to petitioner's analysis or approach? Justice Thomas, I think the main difference is analytical at this point. They concede, as my friend suggested this morning in a note to their reply brief, that eligibility criteria, if they're specified to be in the Attorney General's discretion, will be unreviewable under the second clause. We would put those under the first clause. We think the first clause, with its phrased judgment regarding the granting of relief, is more naturally read to pick up those discretionary eligibility criteria, but there is an analytical difference. I don't want to put words in my friend's mouth, but it may also be that they think there is a higher level of explicitness required for what counts as being specified in the discretion of the Attorney General. One final question. We agree that if you asked Mr. Patel whether he checked the box in his application for a license in Georgia, we agree that's just looking at the application and determine the fact, right? You checked that you're a citizen. That's correct. Whether he checked the incorrect box is a question of historical fact. Okay. Now, whether or not he lied in checking the box, I want you to tell me why that is also a fact. It's a fact. As opposed to a determination that includes some discretion. I don't think findings of historical fact like that include any measure of discretion. There's a right answer and a wrong answer to this particular question. Did he tell a lie or did he not tell a lie? So how is that a fact? It's a fact because it's something about the state of the world at the time that he acted, and it can be determined either correctly or incorrectly. So it's exactly like checking the box? Yes. In our view, questions of subjective intent at the time an action was taken are the same as did he check the box or did he not check the box? But how can that be? Because it seems like credibility determinations, and Justice Kavanaugh alluded to this, require, in contrast to when you look at them at a cold record, require some element of judgment, right, like looking at him, listening to his testimony, and drawing a conclusion, you know, which requires the exercise of some discretion about whether or not Mr. Patel was telling the truth. It just seems hard from, it's hard for me to see why that's exactly the same as checking the box or not. I agree it may be a little more complicated of a factual inquiry. I don't think it's fair to say that it involves discretion, though. If the immigration judge were to determine, I think the evidence shows that this person lied, but I'm going to exercise my discretion to find that he told the truth. Everyone would agree that that's impermissible. Questions of credibility are traditionally treated as questions of fact. If you look at Section 1229A, it specifies the different criteria that a court should consider in assessing credibility, and they're all factual considerations. Although I acknowledge that it's a slightly more complicated one than the question did he check the box or not. Didn't you just give the answer in part by saying generally a judge doesn't say, I just think he lied, a judge gives reasons for why he thinks the person lied, and those reasons are supported by the record or not, correct? Correct, yes. That's why we think of them as facts. Every judgment doesn't necessarily mean discretion. Yes, agreed. And there are multiple meanings to the word judgment. Here, the statute uses the term judgment to include a discretionary component, and that's evident not just from the dictionary definitions that were contemporaneous at the time, although those did include a discretionary component. They define judgment as notion, estimate, opinion, but the statutory context also indicates that the term judgment here includes a discretionary component. The title says denials of discretionary relief. Even more critically, the second clause refers to any other decision or action specified to be in the discretion of the attorney general or the secretary. But isn't your argument that findings of fact never constitute discretionary, never constitute a judgment? Our position is that objective findings of historical facts will not constitute a judgment within the meaning of this particular provision. I'm not disputing that colloquially it might be used to refer to findings of fact, but the contextual cues here indicate that that's not the case. So you are not making the argument that simply looking at the dictionary definition of the term judgment is sufficient to support your position? No, Justice Alito. The dictionary definitions support our position. They do define this to have a subjective component, but they're not alone enough. And I think the most important contextual... Why do they support your position at all? Because any factual determination involves some exercise of judgment, doesn't it? Some involve questions about which no reasonable person could disagree, but many, like the determination of credibility, involves consideration of a number of factors. And it's very natural to say, in my judgment, this person was telling the truth, or in my judgment, this person was not telling the truth, right? It is possible to speak in that way. The dictionary definition... Is there anything odd about speaking in that way? Well, the dictionary definitions of the time tend to have a little more nuance to the meaning of the term judgment. They define it in terms of subjectivity, discerning competing factors, weighing competing factors, and the INA, similarly, consistently uses the term judgment in this way. The INA uses the term judgment 12 times outside of this provision. Eight of those times, it's referring to a court judgment, which wouldn't apply here. And then two of those times, it's referring to a discretionary judgment. And you... What is your definition of a discretionary judgment? I think there, it's just a bootstrapping example. Congress is just making absolutely clear that judgment has the discretionary component. But what... Larry, what is the discretionary decision? What is your definition of a discretionary decision? A discretionary decision, in terms of identifying one for purposes of the statute, would be something that is value-laden, requires weighing of competing factors. There may often be a history of non-reviewability, as there is with a hardship criterion. It may be traditionally have been reviewed for abuse of discretion under Pierce v. Underwood, looking at those kind of factors. And sometimes, there will be an express textual indicator that it's discretionary. For example, if the statute says, in the opinion of the Attorney General or in the opinion of the Secretary. Well, we treat a credibility determination as a question of fact. You don't have discretion, right? That's your position? Correct, Mr. Chief. But can't you have people who, when they're making a judgment about whether an applicant is lying or not, somebody could say, I place a lot of weight on demeanor. I mean, if a person looks nervous or something, I tend to think she's more likely lying. And somebody else says, no, I don't do that. I don't regard it at all, because I think people applying for, you know, this type of relief, they're going to be nervous. They're facing a lot of things. Now, isn't it an exercise of discretion, what type of criteria you apply in determining what you say is ultimately a factual question? I don't think so, Mr. Chief Justice. And I don't think there's any dispute that credibility determinations would be non-discretionary fact questions. I don't want to get hung up too much on the colloquial meaning, though, because the statutory context here is very important. And the second clause, this Court interpreted in Kukana to cover, quote, the same genre of decisions as the first clause. In other words, decisions made discretionary by legislation. And the only way to read those two clauses together, as Kukana did, in this case, is our interpretation. We read the first clause to be limited to discretionary determinations and to cover all discretionary determinations underlying listed forms of relief. So I don't understand whether you've answered my question, is what would you call it if somebody says, I put a lot of weight on personal demeanor, and somebody else says, well, I don't put any weight on demeanor. Isn't that an exercise of discretion in determining a factual issue? No, Your Honor. I think that would require a searching inquiry. They would have to be paying close attention, sorting what they find more persuasive or not. But I don't think that we would say that they have the discretion to choose what the right answer is in this factual question. But they have the discretion to determine, I take it, that they're going to regard nervousness, or they're not going to regard nervousness. That's not typically how this Court talks about credibility determinations. When it talks about complex factual questions like this, it will review them for clear error or substantial evidence. It won't typically review them for abuse of discretion. And I think the same approach is appropriate here. Mr. Weiner, I think I'm a bit confused. The factual issue here is not the ordinary kind of, was he lying in the legal proceeding, right, in which we usually say, oh, it's a credibility determination as to whether he was lying on the stand. The factual issue here, if I understand correctly, is whether he was what his intent was when he checked the box. So it's a question of historical intent. It's not a question of his credibility in the particular legal proceeding. Is that right? I agree with that, Justice Kagan. I don't want to run from the fact that the immigration judge did find his testimony to be non-credible, the judge did say that. But I agree with you, it is an objective question of historical fact. But the factual issue at issue here is not that. It's what was his intent when he checked the box? Correct. Did he tell a lie? He did ask questions about what his intent was, right? And that credibility comes into that, right? In terms of assessing the answer to this historical question, the immigration judge did consider his credibility on the stand. But he's always, he's asked questions about a lot of factual issues, right? That doesn't make them any less factual. I agree. You know, did you check the box with a pen or a pencil? Or, you know, I mean, and, I mean, the fact that he's later asked questions and his credibility is at issue doesn't make the underlying factual issue less factual. I agree, Justice Kagan. And nobody is suggesting that the... Well, what are you agreeing to? I mean, I don't understand. Is it an exercise? You think no discretion is involved in examining credibility, which is a predicate determination in determining what you think the historical fact is, right? Credibility was important here in determining the historical fact. That won't always be the case, but I agree that... Well, I know, but it would be an exercise of discretion, for example, if you think it is, the extent to which you think it is pertinent. Mr. Chief Justice, I don't think this Court has traditionally described credibility determinations as discretionary determinations. However, if the Court were inclined to go this way, to agree with us that this is limited to discretionary determinations, but to be unsure about whether credibility fell within that bucket, I think a remand would probably be appropriate here. That would be a second-order analysis. Because the first-line question is, does this cover discretionary determinations? Yeah, yeah, all right. So look at the discussion you've just been having. What I don't really see is the virtue, legal virtue, of taking the government's position as compared with Mr. Fleming's. I mean, if those were the choices, what you seem to have done, think about this. Step one, step two is at least comprehensible to an ordinary person and even to a judge. Okay? I got that. And now what we're doing, we're going to have, like we have in the code here, about eight pages of tiny print in some of these things about what goes before the Attorney General may. I'll grant you that may could be discretionary. And you want to throw in the box called discretionary, things like good character, extremely unusual hardship, et cetera. And who knows what else? We just have an example here. So all we're going to do is introduce, if we take yours, a new issue. And this new issue is going to be whether any of these words, and there are loads of them, fit within the government's idea of special discretion or not. And at that point, I foresee lots of arguments of this kind. All we need to say is, wait a minute, B has to do with the step two kind of discretion. And if you look through all five, you find in the first sentence of each of those five, either the word discretion or at least the word may. You see my question? How did the government get to this point? I don't get it. Justice Breyer, respectfully, I don't think Petitioner's position allows you to avoid this issue. They concede that certain eligibility criteria will be unreviewable under the second clause. So you're going to have to do precisely the same analysis simply under the second clause. I don't think that that's what they concede. They concede that under the second clause, there may be overlapping judgments. But they would say the initial eligibility criteria are always reviewable. Now, if in the second stage, the Attorney General or the Secretary or whoever makes this decision, you know, talks about overlapping issues, that's what they've conceded. But theirs is a very simple line. Step one, eligibility, reviewable. Step two, discretionary, not reviewable. Justice Kagan, with respect, their footnote says, subsection B-1 does not strip review of first step eligibility determinations. Review of such a determination may be barred if it satisfies subsection B-2's requirement. And I think that's- I think I read that differently than you. I just read them as saying, once you get to the step two stage, everything is not reviewable any longer. But the step one stage, everything is reviewable. I just don't think there's- it's inconceivable that that's their actual position because certain eligibility criteria are expressly in the Attorney General's discretion to take inadmissibility as an example. In some cases, the non-citizen will take waiver of inadmissibility at the eligibility stage. And that's in the Attorney General's discretion. The statute expressly says that. And if all step one questions are reviewable, that means courts would be able to review even waiver decisions. And I just don't think there's any way to read the statute that that kind of thing is reviewable simply because it happens to fall under step one. Okay. This is Thomas. This is Byron. No. Thank you. What is the mens rea requirement, if any, for the inadmissibility determination here? I don't have the statutory language in front of me, but my recollection is that it says someone is inadmissible if the person represents- a U.S. citizen. Isn't that what it says? But it does say that, Justice Alito, but it also says for a purpose or benefit. And the Board of Immigration Appeals has read that to mean that you have to make the representation for the sake of obtaining the benefit. So a mere mistake in checking the box. So the BIA has read in the mens rea requirement. That's correct. And we didn't challenge that below. I do want to make clear the difference between you and the petitioner is irrelevant to this case, correct? That's correct. We both agree that this particular fact question is reviewable. So the conversation we've been having is more on a theoretical level. I don't know that it's theoretical, Justice Sotomayor. I do think if this court's going to draw a line between discretionary- But we don't have to. That's what you're telling us. On the facts of this case, we don't have to. I don't know that there's any way that this court could hold that fact questions are reviewable without drawing some kind of a line based on the text of the statute. And the only one- Well, but you're conceding here that these are facts. Yes, Justice Sotomayor. But the reason we think fact questions are reviewable is because the term judgment regarding the granting of relief only applies to discretionary determinations. Justice Kagan, is that correct? Much of Ms. Meehan's article rests on the meaning of 1252A2D. And essentially, she says that ought to be read back into the provision that we're interpreting. It says that law questions, constitutional questions, are reviewable. The natural implication of that is that factual questions are not. What is your answer to that? Justice Kagan, structurally, that's not how the statute works. The statute establishes review bars, including this one, and then it cards out an exception in subparagraph D. And if a determination doesn't fall within the review bar in the first place, you never need to reference subparagraph D. So this was at issue in Nasrallah, for example. The determination there simply didn't fall within the review bar in the first place. So whether it fell within subparagraph D was irrelevant. If Congress had thought that there was review of these sorts of factual issues, wouldn't it have been concerned in adding that provision that the implication was to the opposite effect? I don't think so, because the provision actually says, shall not be construed. So if anything is confirmatory of the existing circuit consensus, eight circuits had held this was limited to discretionary determinations. The Real ID Act is what enacted subparagraph D, and that was nine years after ARERA enacted this B Romanet I. And there's just no indication that in the Real ID Act, Congress meant to constrict or expand the scope of the review bar in B Romanet I. Has this been the government's position since 1996 consistently? No, Justice Kavanaugh. This is our position starting in 2001. I acknowledge that before 2001, the government took the Court of Appeals position. After St. Pierre, when it became clear there might be constitutional issues with that position, the government flipped, acknowledged its flip in light of St. Pierre, and argued for the position that we have now held since that time. I guess one of the questions that comes up, and this falls on Justice Kagan's question, is I think there's a little bit of a mismatch between the government's position starting in 2001 in the statutory language of the provisions that include the subsequent Real ID Act. So I understand why the government in 2001 would have said, St. Pierre, we need to do something different, and the Courts of Appeals cases were out there, as some of them were out there at that time as well. But then what St. Pierre said was questions of law, it didn't say discretionary. And so the government's position seems to be a little bit of a mismatch, which then becomes more of a problem once you have the Real ID Act, the mismatch. Tell me how to work my way through that. Our constitutional avoidance reading in 2001, you're correct, was slightly overbroad with respect to the concerns that St. Pierre identified, but that's because that was the plausible way to read the text. There really wasn't any way to read the text to just exclude questions of law and precisely track the concerns identified in St. Pierre. So we took the position in 2001, this is the best reading of the text, and it takes care of the concerns in St. Pierre. Now, once that was justified as a constitutional avoidance reading, the addition of subparagraph D, ameliorating the constitutional concerns, doesn't retroactively change what the best reading of the text is. Clark V. Martinez says, whether constitutional concerns come or go, we're not going to change our reading of the text. And in the Real ID Act, Congress left intact the operative language here. Yes, if the Real ID Act had been present as of 2001, maybe the government would have adopted a different position, but that's speculative, I suppose. Let me ask two, sorry to prolong this, but two questions. What are the problems if we adopt the petitioner's position, and what are the problems if we adopt the amicus's position from the perspective of the government, which has had a consistent position on this since 2001? Yes, with respect to petitioners, again, I think their position is largely aligned with ours, except for perhaps an analytical distinction, and they would put discretionary eligibility criteria under B2 rather than B1. So if an inadmissibility waiver comes up at the eligibility stage, for example, I think they would acknowledge that's unreviewable under the second clause, not the first. That's purely an analytical difference. With respect to amicus, obviously there are large practical differences. As my friend pointed out this morning, the starkest practical difference is at the district court level, when DHS makes these adjudications outside of removal proceedings, there's going to be no review whatsoever. But then, of course, there's also a practical difference at the court of appeals stage in that we think factual questions are reviewable, albeit under a very deferential standard of review. On the district court point, what's the volume there? Unfortunately, and somewhat surprisingly, there's not a lot of clear data that precisely tracks this question. Based on some internal calculations, it appears that they were probably north of 1,000 challenges in district court to DHS determinations in the past year. Petitioner's reply brief at no date cites some additional statistics, but those don't precisely map on to 1255 adjudications. Includes a slightly broader set of adjustment applications. So I think it's fair to say that USCIS likely adjudicates or receives more applications than does the Executive Office for Immigration Review, but unfortunately I don't have very good data on that question. Thank you. Justice Breyer. I just have one question, Mr. Raynor, and this is following up on Justice Breyer's point. I mean, the virtue of both the amicus's position and the petitioner's position, both positions are easily administrable, and they both draw a bright line. I find that treating the discretionary part, as Justice Breyer pointed out, it introduces complications for courts and have to figure out which bucket something falls into. And so, given that the bar also applies to judgments regarding cancellation of removal, can you just explain, you know, how the court is supposed to decide whether the factor, whether the removal would result in exceptional and extremely unusual hardship to spouse or child or parent? How does the court decide discretionary, non-discretionary? Is that also mixed facts and that also has some discretion mixed in? Your Honor, we would not agree that it's a mixed question of law and fact under Guerrero, but there is some question about that in the lower courts right now. In terms of identifying discretionary determinations, you would look to several factors. One is, does it include expressed discretionary language like in the opinion of the Attorney General? The example you gave doesn't happen to include that language, but some hardship criteria, as for example under 1255, do include such language. Then you would look at whether it requires value-laden decision-making, and you would also look at whether there was a history of non-reviewability. For example, there was a fair amount of pre-Irira case law treating hardship determinations as discretionary, and we think it would be appropriate for the court to look at that in making that determination. I would just note in terms of the practical concerns here, the Courts of Appeals have been doing this for 20 years. The Executive has stood behind this interpretation for 20 years, and we obviously have a strong interest and a practical line. And regardless of what you hold about B Romanet I, this type of parsing is indisputably required under B Romanet II. B Romanet II requires you to identify precise criteria and then determine whether it's discretionary or not. So courts are going to be doing this under one of the two provisions. Thank you. Thank you, Counsel. Thank you. Ms. Meehan. Mr. Chief Justice, and may it please the Court, I'd like to come back to some of the questions about an alternative meaning of judgment and why that will still bar review here. But before I do that, I'd like to start with what I think is the only correct meaning of judgment as used by Congress here in the jurisdictional bar. Judgment here means any decision with a connotation of formality or authoritativeness. That formal decision or judgment is the overall denial of discretionary release. Like all judgments, it subsumes any subsidiary determination made along the way to denying release, so whatever the reasons leading to the denial of release, the resulting judgment is barred. The only exceptions to that jurisdictional bar are in subparagraph D's exceptions clause, precluding review of constitutional claims and questions of law. Congress left no doubt in 2005 that these are the only exceptions. How? By also adding to the text of the jurisdictional bar. In the jurisdictional bar itself, Congress added, except as provided in subparagraph D, meaning except for constitutional claims or questions of law, no court shall have jurisdiction to review any judgment regarding the granting of release. There is not a lurking third exception for some findings of fact unenumerated in either the jurisdictional bar or the exceptions clause. To say that there is would be contrary to the text of the statute, contrary to the structure of the statute, and contrary to one of ARERA's overarching purposes to streamline judicial review, here leaving fact finding in the hands of the executive branch consistent with historical practice. Mr. Patel's factual claim is concededly not a question of law or a constitutional claim. The 11th Circuit was right to reject it on jurisdictional grounds. I welcome the court's questions. Ms. Meehan, you seem to rely quite a bit on the clause regarding the granting of release as having a broadening effect on judgment. How would you interpret the statute if that clause did not exist? I think I would still interpret it the same, but here's why it needs to exist, especially for the statute as written in 1996. The statute in 1996 was directed at appeals from removal proceedings, and so that phrase regarding the granting of release under those five subsections at its most basic level is serving an identifying function. Because in the removal proceeding, you will have judgments regarding the granting of release under these five statutes. You'll also have a removability decision, and perhaps you'll also have, say, the denial of asylum, and what that phrase regarding is doing is telling you the set of decisions, the discretionary relief denial, that is what is barred by the jurisdictional bar, but the removability decision is still appealable. And that's one of the larger problems with petitioner's alternative reading that Congress should have just said final order. Mr. Patel has every right to appeal the removability decision, and if you say that he can't appeal the final order of removal, that brings along with it that removability decision. Now, regarding also has a broadening function. I think it's Congress's way of explaining that a judgment denying release for eligibility reasons stands on the same footing as a judgment denying release for discretionary reasons, or perhaps a judgment denying release for a mix of reasons falling into either category. One way to think about it is regarding was Congress's way of rejecting petitioner's interpretation here. And to petitioner's argument that regarding is a term of order, is a way of thinking about targeting those second step decisions, I think that's just wrong. And section 1252 shows us why. So in the next subparagraph, in 1252B4D, Congress did exactly what petitioner said it should have done here. In B4D regarding asylum, Congress refers to the Attorney General's discretionary decision whether to grant asylum release. And that comparison between 1252B4D and the much more categorical language here in the jurisdictional bar, I think is the end of petitioner's argument. We don't assume that the language Congress used in B4D is that same regarding language we hear, we see here in the jurisdictional bar. Council, I don't understand your answer at all, because I don't see how your interpretation in the various subdivisions you gave us give any meaning to regarding the granting of relief whatsoever. Congress need not have specified any judgment in B1 as distinct from a decision or action in B2. Why didn't it just say, any decision or action? It used different words, judgment regarding. And it seems to me that if decision or action is as broad as you claim it is, then judgment regarding the granting of relief has to be more narrow. You can't make it broad at the same time. Because otherwise it would have used identical language. Second, I'm not sure how we ignore neighboring subsections A and C that show when Congress wanted to strip jurisdiction broadly in the way that you wanted to. You wanted to strip both factual and legal jurisdiction. Congress knew how to do that in A and C. And it could have just copied that language, yet it used distinctive language altogether. That adds to all of this. I think all of this means that at best the statute is ambiguous. It's not clear. And if it's ambiguous, I don't know what to do with the presumption favoring judicial review. That's so well embedded in our jurisprudence. It's what made us decide Cucullin last year. This makes no sense to me. So give me a reason why Congress would do something different in B1 and B2. That would give meaning to all of the words. To your first question, Justice, I actually think looking at the context, I agree with you. We should look at the surrounding provisions and the differences in language Congress used here. I think actually once you do that, it all points in the direction that the jurisdictional bar means the overall denial of release. Second, with respect to A and C, those are helpful examples of having to use different language for different things. So I read A2A actually as a bit narrower. I think it's interesting that Congress in that provision says any individual determination and doesn't say any judgment. And when Congress says that, they're reserving the right to have a legal challenge or whatever else about expedited removal proceedings. With respect to C, the real problem is what I mentioned earlier with Justice Thomas. You can't speak categorically like a final order of removal in subparagraph B in the jurisdictional bar here because if you did that, you'd be precluding Mr. Patel from appealing anything related to the removability decision. And he's not subject to the criminal alien bar. He has every right to appeal the criminal alien, pardon, the removability decision. And so what's left is Congress' choice of words to bar instead just the denial of discretionary release. And again, any judgment is much different here than any, the Attorney General's discretionary judgment, for example, in 1252B4D or the Attorney General's discretionary judgment in 1226E or the other examples that petitioner and the government point to where judgment is being used as the object of the preposition, in the judgment of someone. I would agree if the provision here said something about a determination in the judgment of the Attorney General. It's a closer case. So give me a reason why Congress would want to separate out judicial review regarding factual matters on removability, which it's sort of has permitted, from those that have to do with the decisions of agents like this. Before 2005, I think arguably what Congress was doing here was prohibiting review of the entire denial of discretionary release. I think that's the easiest way to make sense of the jurisdictional bar then amended by the exceptions clause. But even if that's not what Congress was doing and it was just making fact review different for removability or discretionary release, one reason Congress might have wanted to do that is the removability decision itself has higher stakes. There are greater due process concerns. And so we would want to afford a non-citizen the ability to appeal that in a way that discretionary release is but a matter of grace. And so in streamlining judicial review, as was one of ARERA's overarching purposes, Congress took off the table that fact review. Thank you. You left out. I think Justice Sotomayor brought up a set of relevant factors. Where I am at the moment, I think to be very, to really ask the congressman if he ever thought about this, he probably would say before St. Cyr, we wanted no review. At least I didn't. But that isn't what they said. And so then what we have now, we have D and we have the St. Cyr, anti-St. Cyr review or whatever. Then we go and you look at A, B, and C. Okay, when I read it, the music of those words. Look, any individual determination or to entertain any other cause or claim. God, it sounds like we really mean it. And of course, that makes sense because in my mind, those are people standing up in line at Ellis Island or in the, and we don't, the courts don't look at visas from given in Paris and we're not going to have them look at the people in line in Ellis Island either, we really mean it. Okay? And then you look at C, and these are criminals. I mean, get rid of them. Okay? And then we look at B, and B uses softer language. Any judgment regarding B is softer language. Moreover, we look at the title, and the first one, in effect, says, the line at Ellis Island. And the third one says, criminals. And the second one says, discretionary relief. And then we have awfully good reasons, which Justice Sotomayor brought up, to say, hey, the Attorney General is supposed to decide this discretionary deal. I mean, keep the courts out of that. But that reason doesn't quite apply to all the subsidiary fact things. So now we stick in D, and maybe they carry along with, I don't know how to do that. It just looks different to me. So once it looks different, well, then you call in the presumption of review, you see? And once we get the presumption in review, it sort of pushes against what was a good brief. I mean, it pushes the other way. And so I'm slightly stuck, and I'm slightly stuck on this presumption of review. And I can see how to deal with the government, you say. Discretion, you know, discretionary decision, which is that last decision. Stay here, my friend. And anything in the 19,000 words in the 1182B or wherever, that's the same, and we don't have to decide what's the same in this case. So I can see it both ways, but I think that presumption is tough for you. I'll take your questions in reverse order, Justice, which I'd like to say something about the presumption of review first. It hangs together a bit with the text, right? So the starting point here for the presumption is this is a jurisdictional bar. Right out of the gate, Congress has indicated with clear language that it anticipates some set of decisions will be beyond review. And then when you combine that observation that we have a jurisdiction. So, Ms. Meehan, wouldn't the presumption apply in terms of deciding what the scope of that provision is? I mean, it doesn't just disappear because we're dealing with a review bar. I agree. I agree. But this is unlike a case like Bowen, for example, where the statute doesn't say one way or another. It's silent. But I agree. So you combine that jurisdictional bar. Not to press the point if you agree, but, I mean, you might think that Congress acts with the presumption in mind, especially when it's doing a review bar, as opposed to when it's silent. You might, and in which case you go to the next order of analysis, which is you exhaust every canon of construction that includes grappling with what subparagraph D can possibly mean, if subparagraph B means what the government says it means in particular. And you're left with a clear implication, or, pardon, you're left with a clear conclusion that the jurisdictional bar must mean the overall denial of relief. And if that is clear, there's no reason to apply a presumption of review. It is only a tiebreaker. Only if once. I didn't mean to take you off of Justice Breyer's main point. So the, well, to Justice Breyer's question, the main reason I would not apply the presumption of reviewability here is because once you exhaust the canons of construction, I do think the only correct way to read the statute is as the 11th Circuit read it. But even if you disagree with me on that, this would be an awfully strange case to apply the presumption of reviewability if you consider the origins for the presumption of reviewability, how it's ordinarily applied, and then historic reviewability of immigration decisions more broadly. The presumption of reviewability largely originated with the APA. The purpose of it was to review questions of law about whether agencies were following their own rules, whether they were following Congress's rules. No one disputes here that Mr. Patel could appeal a question of law of that order. But I am not aware of any of this court's cases in an immigration case where the court has applied the presumption of review to allow a petitioner to re-litigate a question of fact. But, I mean, if we take that view, we're in the same mess as the other. Because, you know, the APA has them all in the same place, substantial evidence on the record as a whole, and that's in review law fact. It's all in the same place in the statute. And we start making these distinctions, at least if we don't have to. Between a review for substantial evidence and a review for, that's a question of law. And really, I mean, really is a, you call it a question of fact. But, God, I can think we'll get into a mess, or the courts will get into a mess. Is this, I've not seen it distinguished, in other words, and I don't see why it should be. The best example of that distinction is in McNary, which is helpfully an immigration case where the presumption of review was at issue. In McNary, the court reviewed what it called a generic question of statutory interpretation about visas for these special agricultural workers. The court went out of its way in McNary to say, to be clear, we are not reviewing, no one has asked us to review the merit of the individual applicant's applications here. We are only reviewing the more abstract, the more generic question of what the statute means. And then we're leaving it to the agency to determine how to apply that in this case. And that is consistent with decades of this court's case law and other federal courts' case law acknowledging that they take executive officials' facts as found. And the court's only role is to answer the questions of law that would arise. Did she say facts as found, even if not supported by substantial evidence? St. Cyr is, St. Cyr is the best. St. Cyr didn't deal with that. It dealt with the law, and it dealt with what you have to have in habeas. On page 306 of St. Cyr, the court actually distinguishes between fact review and these historical habeas decisions and questions of law. And I actually take that passage of St. Cyr to mean that if Mr. St. Cyr had come to this court with a factual dispute, the case would not come out the same. But that's habeas. It is habeas, and that is only more helpful here. So if it is true that this court was reluctant or unwilling to review factual questions in a habeas case about an alien detained pending removal, then it must necessarily follow that it would be odd to apply the presumption of judicial review here for a denial of discretionary relief, a fact question about the denial of discretionary relief. Ms. Meehan, I want to clarify the scope of your position. So isn't it true that your position does lead to the conclusion that in district court even legal questions are not reviewable? I think that is the right way to interpret the statute as amended in 2005. So before 2005, I actually don't think that was true. In 2005, one of the Real ID Act amendments was, if you look at pages 10 and 11 of my brief, Congress adds the phrase, regardless of whether the judgment, decision, or action occurs during a removal proceeding. And the courts of appeals are relatively uniform. That means a petitioner must wait until they're placed into removal proceedings to dispute a denial of discretionary relief. Now, I think that is an issue of Congress's own making and could be something that Congress could solve. There's a good reason why Congress wants that to be the case, which is exhaustion. But before I say more about that, I would like to address some of the statistics questions and put it all in perspective. So first off, this concern about USCIS denials not being immediately reviewable affects only one of the four categories of discretionary relief in the jurisdictional bar. As best I can tell, it affects only adjustment of status, it doesn't affect cancellation or some of the inadmissibility waivers, including because something like cancellation or voluntary removal is only happening in the context of a removal proceeding. Second off, even for that set of adjustment of status applicants, the vast majority are unaffected by this. I think we're only dealing with a very small percentage. This year alone, the average approval rate for one of these USCIS adjustment of status applications has hovered around 87%. 213,000 adjustment of status applications have been granted this year. And of those 10 to 15% of cases of adjustment of status applications that are denied, again, there's good reason Congress expected those individuals to exhaust their administrative remedies before involving the courts of appeals. As Mr. Patel did here, he applied for adjustment of status with USCIS in 2007, 2008, then he had a hearing before the Immigration Court, then he had an appeal before the BIA. He has an opportunity to file a reopening motion within a certain amount of time, and only then does the 11th Circuit get involved. And again, this is, I think, what Congress anticipated by that amended text in 2005. There are additional issues with petitioners and the government's interpretation that are not what Congress, that were not problems of Congress's own making. Ms. Smith, can I stop you there and just, can I take you back to the basic question here, which is judgment regarding the granting of relief and what that phrase means. And I think, you know, you come into this with a kind of good ordinary meaning argument. I take Mr. Patel to be saying, it's really not the ordinary meaning here. This is a kind of term of art that refers to the step two determination as opposed to the step one eligibility functions. And I'm just going to give you a bunch of places in which that language is, it sort of supports his argument and ask you for your response to it. So 1229A, which is the overarching statute governing how removal proceedings work, that statute basically breaks it down into two steps in just the way that Mr. Patel does and says the non-citizen has to prove that she satisfies the initial eligibility requirements. And then, this is number two, with respect to any form of relief that is granted in the exercise of discretion that she merits a favorable exercise of discretion. So the granting of relief is in that part. Then similarly, there's a regulation that breaks the relief down into two steps. And in that second step says it should be granted in the exercise of discretion, a phrase that does not appear in the first step, which is eligibility. And then, Mr. Fleming, I think, cited 1252B4D, whether to grant relief under 1158A of the asylum title, which pretty clearly has to be about the second stage inquiry rather than any first step factual issues. Then, I'm sorry to do this to you, but we several times, we in St. Cyr, in Bogomolsk-on-Don, in Pareda, very, very recently, cases spanning nearly 50 years of immigration law, all of them distinguish between eligibility and the step two discretionary determination. And all of them talk about the discretionary determination as being about whether relief should be granted. So using that exact same language, basically coming from the statute and appearing in all of our cases. So that's my question to you. Sorry. I'll try to hit each of them and then please tell me if I don't. So I agree with you as a general matter. Certainly, the court has observed and then the statute seemed to observe that there are eligibility questions or issues and there are discretionary issues. I agree with that. Often, the reason that is so is the court here has had to make clear that those eligibility considerations are a floor and that the attorney general doesn't have discretion always to go beneath that floor. You can't grant cancellation, for example, to someone who has committed an aggravated felony and that floor remains. I don't think those observations about the two-step mean anything for the jurisdictional bar because Congress didn't, in codifying the jurisdictional bar, say eligibility or say discretion. It's true, but it keeps on using the word granted and, you know, excuse me, it says, you know, granting relief, which is the phrase that appears in the two-step, in the second-step part of all these provisions and our cases rather than in the first-step part where we just don't talk about granting relief with respect to making these eligibility determinations. I agree with you there and I think this would be a much harder case if the word regarding and if the word any were not involved. But I don't think the word granting can carry that amount of weight and the reason for that is how Congress used granting in section 1252B4D, whether to grant relief. Or here a harder statute would be the granting of relief in the discretion of the attorney general. I don't think the granting of relief is necessarily limited to the second-step. If it were, the statute would be phrased as the asylum statute is phrased in B4D. With respect to 1229A in particular, it's setting out a two-step for the immigration courts. That is a provision that governs the immigration proceedings. But even as this court said in Begamofad, the immigration court doesn't necessarily need to do step one. They can go straight to step two and deny relief for discretionary reasons, which would be unreviewable. But they could do that and that would be unreviewable. I guess the point that Mr. Patel is making is that when you're doing step one, step one is not about the granting of relief and so it is reviewable. One way to think about the difference between the granting of relief and granting of relief, which I think is the main textual problem with petitioner's argument, they're reading them the same. If I told you we're making decisions about or we're making decisions regarding the sending of astronauts to Mars, you would know that means something different than decisions regarding sending astronauts to Mars, right? At least the latter feels a little bit narrower. The granting of relief naturally encompasses decisions based both on eligibility grounds and on discretionary grounds. So I take that argument, you know, the of is a different sort of formulation. But in a context in which there's a presumption of reviewability, that starts looking like, whoa, that's a little bit fine for, you know, this context. As this court has said, there is both a presumption of reviewability and there is an expectation with jurisdictional bars that the court will construe the jurisdictional bar with strict fidelity to its terms. Just as much as the court has to preserve its power of review, Congress has its power to restrict review. And here Congress did so and think about regarding the granting of relief as a way of eliminating that ambiguity. Regarding the granting of relief has that broadening effect and it shouldn't be read in isolation. I agree this might have been a harder case before 2005. But there's no way to understand the exceptions clause or there's no great way to understand the exceptions clause if altogether any judgment regarding the granting of relief under these five discretionary forms doesn't mean the overall denial. So that when Congress and the exceptions clause restores jurisdiction for constitutional claims and questions of law, there's something to restore. In the government's view, the judgment has always excluded questions of law and constitutional claims and that makes very little sense than why Congress would cross-reference the jurisdictional bar and the exceptions clause in 2005. The presumption of reviewability doesn't hang only on the phrase regarding the granting of relief. It requires interpretation of the whole statute. And once you do that, I think there's more than a clear statement that review here for fact-finding is barred. Can I pick up on your reference there to the government's argument and just get your reaction to what I think is the music of their argument? So you have the 96 Act and they agree with your position for the first five years. Then St. Cyr comes along, 2001. The Bush administration decides we need to interpret this statute in a way to avoid the constitutional problem. And they come up then, the government comes up with its current position, the discretionary position relying on the title and other things. Then 2005, the Real ID Act comes in, really talks again like St. Cyr about questions of law and constitutional questions. So a little bit of a mismatch with the government's position. But I think what the government's saying is we've now done it this way through four administrations for 20 years and the courts have interpreted it that way. And at least after St. Cyr, we found enough ambiguity in this, the title provision, other things of how they fit together, that our interpretation should be good enough. I think that's something, I don't want to put words in their mouths, what they're saying. Why do you think that isn't good enough in this instance? We don't usually have the government coming in in an immigration case through four administrations and saying we want courts to review issues. I don't think it's good enough for two reasons. First, it doesn't abide by the text. And second, there are serious workability issues. So first, even if the statute was unclear before 2005, the exceptions make it clear. And the way I've made sense of the government's mismatch, Justice Kavanaugh, is the government is saying that Congress did something along the following lines. In 1996, Congress told everyone, you can't eat junk food. And then in 2005, Congress said, except you can eat peas and carrots. And if I told you you can't eat junk food except you can't eat peas and carrots, that doesn't make a whole lot of sense. You know what does make sense? You can't eat junk food, but you can eat burgers and fries. And so junk food is the larger category, burgers and fries are in that category. They're the exception and by implication, everything else is still unreviewable. Now, the workability problem. I think there's an alternative meaning of judgment somewhere between, there's obviously an alternative meaning of judgment in the dictionary definitions. Something about forming an opinion, a judgment call, exercising judgment. That's not the right use of judgment here. I think on the outcome, it fairly encompasses credibility. But the government will have this court walking into a circuit split if it adopts that meaning, a judgment call. Again, not the right usage, completely unworkable. The court would have to be creating a federal common law of what is too discretionary or not discretionary enough. Thank you, counsel. Justice Thomas, Justice Breyer, any further? Justice Sotomayor. Your answer to Justice Barrett was, yes, you admit that you're reading bars reviewed by the district court of questions of law. But we shouldn't care too much because it's a very small number of people that are affected by that? It bars immediate review of questions of law in the same way this court in Reno versus AADC and Reno versus Catholic Social Services barred immediate review. But there will be some- But I do think that there are immediate consequences to this failure to adjust. I thought the government moves very slowly and removal proceedings, actual removal notices take ages. But a decision like this can affect a person's work authorization, sponsoring of family members to come here. It affects the pathway to citizenships after three to five years. So a lot of consequences to not having immediate review. I agree there are consequences. Those are consequences I think Congress anticipated in amending the statute in 2005. It could correct those. And I think the court's decision in Reno versus AADC is exactly on point here where there were immediate constitutional claims, First Amendment claims and Fifth Amendment claims about the government's selective prosecution. And the court here held that those claims would have to wait. There couldn't be immediate review. It would have to wait until the end of removal proceedings. Tell me something in the history of this statute or in the logic of St. Cyr which made very clear that on the habeas statute at least, suspending review of questions of law provides a constitutional problem. And what the government's basically saying to us, once they got St. Cyr, a reading that precludes judicial review is not the best reading one should give to a statute. You should go back to the first principles and look at the ambiguity and figure out what the best reading not to do that is. And that's what they've come up with. But your reading does exactly what the government says we shouldn't do. Do you mean with respect to the USCIS denial in any question of law? Yes. So again, I think the statute is relatively clear that the review of that question has to wait until it has been exhausted through the agency process. And it's before the Court of Appeals. Well, this has nothing to do, well, I'm sorry. And it's in a petition for review. And it also has nothing to do with the case here. Mr. Patel again exhausted his administrative remedies. He got review of his question of law in the 11th Circuit. The only question here is whether fact findings are beyond review. With respect to the history, that's fully consistent with the history. Thank you. So the fast food one, it's good. But isn't really the government or Mr. Patel saying you can't eat fast food at lunch, but you can eat burgers and fries at dinner? That's possibly that is what they're saying. As with any hypothetical, it is imperfect. And so then I just go right back to the text. And the text speaks in a categorical way in the way that Congress didn't otherwise speak categorically when referring to judgments, discretionary judgments, and if there were any doubt about that, you've got to look at the transitional rules. In the transitional rules, Congress took a more modest approach, discretionary decisions. The discretionary comes out in the permanent rules, and we get any judgment. You can't read those two the same. So even if we're having fast food sometimes and not always, the transitional rules, I think, give us an important key to the text here. Thank you. Mr. Gorsuch? You're not going to like this question. Assume for the moment the court were to disagree with you. As between the two other options, there's slight variations between the petitioner and the government's theories. But you've raised good metrics for us to measure any interpretation on the text and the workability. Would you care to grade the two alternatives comparatively? I think the petitioner's interpretation doesn't abide by the text and has arbitrariness problems. The government's interpretation doesn't abide by the text and has workability problems. There's actually an interpretation, a fourth interpretation lurking out there that uses the government's definitions but doesn't have the same workability problems. So if you'll permit me, I'll tell you what the government adjacent position is. Which is if you look at pages 16 and 17 of their brief and if you look at that more informal meaning of judgment, the formation of an opinion exercising discernment. That clearly encompasses fact findings. The fact finding here is the best example of that. The immigration judge heard the direct testimony of Mr. Patel, watched the cross-examination, compared it to the record evidence, and then in his judgment deemed him not to be credible. You could adopt that more informal interpretation. It's close to the government's, but it's not unworkable so long as you agree that a credibility determination is a judgment and not a non-judgment as the court says. Now, in context, considering everything else, I think that's a really difficult interpretation after 2005. But it's the second best alternative. What's the third and the fourth? I don't know if I would take arbitrariness versus workability. I mean, the arbitrariness problem in the petitioner's interpretation is real. The petitioners explain their fact findings all along the way to the nondiscretionary relief. And the government says half of them are reviewable and the other half aren't reviewable. I think that's a difficult rule to adopt. I'm not sure which other one I would take. Perhaps petitioners, despite the arbitrariness because it's administrable. But again, I think the text leaves us. I'm having trouble with your question because I've written the text so much. I told you you weren't going to like it. So, thank you very much, counsel. I appreciate it. Can I just pick up on your answer to the government's position, which were, as I described the overall situation, was one, text, and two, workability. So, on text, if you gave a forceful answer there, I think your argument is, even after St. Cyr, they're scrambling. They do a new interpretation. Maybe they get some leeway on constitutional avoidance, but once Congress responds to St. Cyr in 2005, the text is sufficiently clear that they no longer have the ambiguity hook to continue with that interpretation. Is that? I think that's exactly right. And one of the ways to think about the circuit courts before St. Cyr is they were grappling with exactly what the government says.  Congress says, no discretionary, non-discretionary, you know, there's no mention of it. But Congress says, we're going to give you a line between constitutional claims and questions of law and everything else going forward. And importantly, courts, other courts of appeals since then have abided by that line. I think that's a way to understand some of the confusion in 2001 that is no longer with us today after 2005. And then your other answer to the government's kind of overarching position was workability. I think they would respond, well, it's been 20 years now. It's out there in a lot of courts. We're getting along okay. You want to respond to that? I don't think the courts are getting along okay. And if you look at the Treho decision from the Fifth Circuit that's cited, I think, in all the briefs here, that's the existing circuit split. It's the best illustration of the unworkability of the government's approach where some circuits have said some eligibility determination is too discretionary. Other circuits have said, no, it's not discretionary. And then as I take footnote five of the government's brief, they think there's also somewhere in the middle where we can review some parts because they're not discretionary, but not other parts, and I think that itself illustrates the unworkability. Thank you very much. Thank you, counsel. A rebuttal, Mr. Fleming? Thank you, Your Honor. Ms. Meehan said that exhaustion would have to be required, I think, in response to Justice Barrett's question. For people who are not removable, there is no further exhaustion. The American Immigration Lawyers Association brief gives the example of Dr. Abu Zaid, whose case is stayed in the D.C. Circuit right now awaiting the decision in this case. He has an H-1B visa. He's working as a doctor at Augusta University Medical Hospital in Georgia. He is not going to go into removal proceedings. He's here lawfully. He's trying to get a green card so that he can have permanent status here as opposed to temporary status. There's no further exhaustion he can do. He has a final order of USCIS denying his application. The only way for him to get review of that is not under the Eleventh Circuit's vision of the statute, but under ours. Credibility is an issue of fact. In this court's decision in Nasrallah on page 1693, the court says, those factual issues regarding a Convention Against Torture Order may range from the noncitizen's past experiences in the designated country of removal to the noncitizen's credibility to the political or other current conditions of the country. And the BIA in this very case referred to the issues as factual reviewed for clear error. That's on page 106 of the petition appendix. Justice Kavanaugh raised the issue of the Real ID Act. I think what's important there is that the Real ID Act was reacting to the fact that St. Cyr had taken legal issues that were being pressed by people covered by C who had qualifying criminal convictions and put them into habeas instead of into petitions for review. Real ID fixed that, moved them back into petitions for review. But it did not change the situation of people like Mr. Patel who are not subject to C because they do not have criminal convictions. Those people have always been able to appeal factual matters before IRIRA and after. Real ID didn't change that. IRIRA didn't change that. Finally, to clear up any confusion about the difference between our position and the government's, and I don't think our position is arbitrary, with all respect it is me. And our position I think is pretty clear which is that B1 doesn't bar review of any first step decision. Now, I think we admit because I think we have to that under the language of B2 Congress could, if it wished, pluck out an individual eligibility requirement and specify in the statute that that is in the discretion of the Attorney General. And if it were to do that, then there would be no review under B2. And now I think we, I think Kukana supports this. However, that is not just a theoretical distinction from what the government is doing. There is a real practical distinction there. And that is because the government seems to think, as the colloquy has demonstrated, that some of the factors where the statute doesn't specify the Attorney General's discretion are somehow, according to some nebulous multi-factor test, sufficiently discretionary that they should fall under B1. But the question then becomes a sharp one of administrability. How do you determine whether something is discretionary under their view of B1? We think our line is clear. Theirs is not. But as everyone recognizes, for Mr. Patel, that issue does not have to be resolved. Everyone agrees that his appeal is not a non-discretionary factor. We would respectfully submit the decision of the 11th Circuit should be reversed. Thank you, Counsel. Ms. Meehan, this Court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility for which we are grateful. The case is submitted.